UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

CHERYL A. L.,

                              Plaintiff,

v.                                                      5:23-CV-151 (AMN/TWD)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                              Defendant.

─────────────────────────────────────

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         JUSTIN GOLDSTEIN, ESQ.
  *Attorney for Plaintiff*
6000 N. Bailey Ave., Suite 1A
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION              JASON P. PECK, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the

Honorable Anne M. Nardacci, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits.  Both parties have filed briefs.  (Dkt. Nos. 10, 15, 16.)  Oral

argument was not heard.  For the reasons discussed below, the Court recommends the

Commissioner's decision be affirmed and the complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on February 28, 1959.  (Administrative Transcript at 38.[1])  She completed a course of study at college and received a Bachelor of Science.  (T. at 39.)  She worked as a correctional counselor from July of 1986 to July of 2018.  (T. at 187.)  On January 22, 2021, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits alleging disability beginning January 8, 2020.  (T. at 22.)  She alleges disability due to arthritis in both knees, replacement of the left knee, surgery on the right knee, arthritis in the right hand, arthritis in the left foot, and diabetes.  (T. at 48.)

Plaintiff's application was initially denied on May 20, 2021.  (T. at 74.)  She then submitted a request for reconsideration on May 25, 2021.  (T. at 86.)  Her claim was reconsidered and denied on September 1, 2021.  (T. at 87.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on September 6, 2021, and, on September 15, 2021, consented to a remote hearing by phone.  (T. at 95, 97.)  ALJ Jeremy G. Eldred conducted a hearing on March 21, 2022.  (T. at 34.)  The ALJ heard the testimony of Plaintiff, represented by Matthew F. Nutting, as well as the testimony of vocational expert ("VE") Dawn Marie Blythe.  (T. at 36-46.)  At the hearing, Plaintiff testified that she is diabetic, that she has undergone three surgeries on her left knee culminating in a total replacement, that she has undergone one surgery on her right knee, that she suffers from vitamin B12 deficiency, and that she suffers from severe pain in her right leg.  (T. at 40.)  She also testified that she suffers from pain due to arthritis in her left knee, and that the pain in her legs prevents her from walking more than a few steps at a

---

[1] The Administrative Transcript is found at Dkt. No. 7.  Citations from the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.  All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

time.  (T. at 40-41.)  Plaintiff reported that she lives by herself, has a driver's license and has no difficulties driving; she cooks, cleans, and does laundry for herself, and she runs her own errands.  (T. at 38-39, 42.)

On April 4, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA").  (T. at 19, 22-23.)  Plaintiff requested the Social Security Appeals Council review the ALJ's decision on April 8, 2022.  (T. at 12.)  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on January 6, 2023.  (T. at 8.)  Plaintiff timely commenced this action on February 3, 2023, challenging the Commissioner's decision.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

B.    **Standard for Benefits[2]**

To be considered disabled, a plaintiff seeking disability benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets their burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

### C.    Standard for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the 2017 regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

---

[3] Plaintiff's application was filed January 22, 2021. (T. at 22.) Thus, the new regulations apply in her case.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ must "'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.'" *Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § § 404.1520c(a)-(b)(1), 416.920c(a)-(b)(1)).  Furthermore, while an ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors," an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.    Standard for ALJ Evaluation of Symptoms

In evaluating a plaintiff's residual functional capacity ("RFC") for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[4] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623

---

[4] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." SSR 16-3p, 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

(2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id.*; *see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

---

[5] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

## III.    THE ALJ'S DECISION

In his April 4, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. at 23.)  First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date.  (T. at 24.)  Next, the ALJ determined Plaintiff has the following severe impairments: "osteoarthritis of the left knee (status post left knee replacement), osteoarthritis of the right knee, type 2 diabetes mellitus, and obesity."  *Id.*  The ALJ then determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T. at 25.)

The ALJ then found, based on the above-stated impairments, Plaintiff has the RFC to perform "a full range of work at the light exertional level," "except she can climb, kneel, crouch, or crawl no more than occasionally."  *Id.*  Next, the ALJ found Plaintiff's past relevant work as a pre-parole counseling aide "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity," and Plaintiff remained capable of performing this work.  (T. at 28.)  Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from January 8, 2020, until the date of the ALJ's decision, April 4, 2022.  *Id.*

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends that the ALJ failed to identify substantial evidence supporting the RFC finding.  (Dkt. No. 10 at 1.)  Specifically, Plaintiff argues the ALJ erred in evaluating the medical opinions in the record and erred in evaluating Plaintiff's symptomology.  *Id.*  In support of her contentions, Plaintiff argues the ALJ "relied upon the opinions of the State agency reviewing

pediatricians[6] without applying the regulatory factors to the opinions." *Id.* at 8. Plaintiff argues the ALJ failed to adequately address the persuasiveness of the opinion of consultative examiner Dr. Rita Figueroa and Plaintiff's primary care physician, Dr. Jennie Brown. *Id.* at 14, 16. Plaintiff also argues the ALJ summarily rejected Plaintiff's symptomology, without adequately articulating his reasoning. *Id.* at 22. Specifically, Plaintiff contends the ALJ placed too little weight on her reported symptoms and too much weight on her reported activities of daily living ("ADLs"). *Id.* at 23.

## V.    RELEVANT OPINION EVIDENCE

### A.    Swati Gandhi, M.D.

Plaintiff's medical records were examined by State agency medical consultant Swati Gandhi, M.D., for consideration at the initial level. (T. at 47.) Dr. Gandhi issued a disability determination explanation based on this review on May 19, 2021. (T. at 57.) She considered Plaintiff's medical records from Syracuse Orthopedic Specialists, North Medical Family Physicians, and Upstate Medical University, as well as Plaintiff's work history and self-reported ADLs. (T. at 49.) Dr. Gandhi listed Plaintiff's medically determinable impairments, including reconstructive surgery of a major weight-bearing joint, osteoarthritis, diabetes mellitus, and obesity. (T. at 51.) Dr. Gandhi noted Plaintiff's report of pain, determined her listed impairments could reasonably be expected to produce pain, and concluded Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her pain could be

---

[6] Plaintiff notes Dr. Gandhi and Dr. Mohanty are both pediatricians. Under 20 C.F.R. § 1520c, a medical source's "specialization" can be considered when comparing the persuasiveness of two medical opinions. "The medical opinion . . . of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion . . . of a medical source who is not a specialist in the relevant area of specialty." 20 C.F.R. § 1520c(c)(4). As this case does not involve pediatric medicine, the opinions of Drs. Gandhi and Mohanty cannot be afforded any greater weight due to their specializations.

substantiated by objective medical evidence.  (T. at 51-52.)  In the physical RFC assessment, Dr.

Gandhi found Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry

10 pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours

in an eight-hour workday.  (T. at 52-53.)  Dr. Gandhi modified these findings with the following

postural limitations: Plaintiff could balance or bend at the waist all the time, climb ramps or

stairs frequently, and climb ladders, kneel, crouch, and crawl only occasionally.  (T. at 53.)

These postural limitations were made in deference to Plaintiff's knee surgery and elevated BMI.

(T. at 54.)

Dr. Gandhi cited the following medical record evidence in her RFC explanation: from an

August 4, 2020, checkup at North Family Physicians, Plaintiff had "done well after the knee

replacement and had lost weight."  *Id.*  Plaintiff's February 12, 2021, record from Syracuse

Orthopedic Specialists states "[Plaintiff] reports she is doing extremely well subjectively and

objectively almost 12 months postop.  She denies pain, swelling, or fever.  No post

complications and rehab is progressing normally."  *Id.*  Dr. Gandhi assessed Plaintiff as being

capable of performing her past relevant work.  (T. at 55.)

The ALJ found this opinion persuasive, noting it was supported by a detailed narrative

rationale which cited specific supporting objective medical evidence.  (T. at 27.)  The ALJ also

found this opinion consistent with the record as a whole, including the medical records and

Plaintiff's self-described ADLs.  *Id.*

**B.** **Rita Figueroa, M.D.**

A consultative examination was performed by Rita Figueroa, M.D., who issued an

opinion on July 13, 2021.  (T. at 379.)  Dr. Figueroa listed Plaintiff's reported conditions and

symptoms, including bilateral knee arthritis which causes "both knees [to] throb," osteoarthritis

of the left foot, causing "constant, anywhere from 3-8" pain, "tenderness in the right hand," and

type 2 diabetes.  (T. at 376.)  Dr. Figueroa observed Plaintiff's gait was normal, she could walk

on heels and toes without difficulty, her squat was 50%, she used no assistive devices, needed no

help changing for the exam or getting on or off the exam table, and she was able to rise from her

chair without difficulty.  (T. at 377.)  However, Plaintiff's stance was abnormal: Dr. Figueroa

noted her "right leg stance is straight, while the left knee is valgus."  *Id.*  The results of Plaintiff's

musculoskeletal exam were as follows:

> Cervical spine shows flexion and extension 45 degrees each,
> rotation right and left 40 degrees, lateral flexion right 45 degrees
> and left 30 degrees.  No scoliosis, kyphosis, or abnormality in
> thoracic spine.  Lumbar spine shows full flexion, extension, lateral
> flexion bilaterally, and full rotary movement bilaterally.  SLR
> negative bilaterally. Full ROM of shoulders, elbows, forearms, and
> wrists bilaterally. Full ROM of hips bilaterally.  Knee flexion and
> extension right 75 degrees and left 95 degrees. Right ankle full
> ROM, left ankle dorsiflexion 15 degrees and plantar flexion 30
> degrees.  The left knee has a hypertrophic surgical scar.  No
> evident subluxations, contractures, ankylosis, or thickening. Joints
> stable and nontender.  No redness, heat, swelling, or effusion.

(T. at 378.)  Dr. Figueroa also noted that Plaintiff's strength was "5/5 in upper and lower

extremities," with "no muscle atrophy evident."  *Id.*  She opined that Plaintiff's prognosis was

fair, but concluded with the following medical source statement:

> Based on this evaluation, she will have severe limitations for
> prolonged sitting, walking, standing, kneeling, squatting, and
> crawling.  She will have moderate limitations to heavy lifting and
> carrying.

*Id.*

The ALJ found this opinion less persuasive than Dr. Gandhi's opinion.  (T. at 27.)  The

ALJ noted that Dr. Figueroa described Plaintiff's limitations "using vague terminology," leaving

him unable to assess whether the opinion was well supported or consistent with the record.  *Id.*

The ALJ also noted "an interpretation of [Dr. Figueroa's] opinion that would result in greater physical limitations . . . would not be well supported by Dr. Figueroa's physical examination findings." *Id.*  The ALJ also found Dr. Figueroa's opinion inconsistent with Plaintiff's other medical records and her self-described ADLs.  *Id.*

### C.    Radharani Mohanty, M.D.

Plaintiff's medical records were then examined at the reconsideration level by State agency medical consultant Radharani Mohanty, M.D., who issued a disability determination explanation on July 21, 2021.  (T. at 59, 69.)  Dr. Mohanty considered Plaintiff's medical records from Syracuse Orthopedic Specialists, St. Joseph's Hospital Health Center, North Medical Family Physicians, and Upstate Medical University, as well as Plaintiff's work history and ADLs.  (T. at 62-63.)  Dr. Mohanty also considered the consultative examination report from Dr. Figueroa and dismissed her opinion as "an overestimate of limitations . . . not supported by medical evidence on file."  (T. at 61, 66.)  Dr. Mohanty made the same RFC findings as Dr. Gandhi, with one exception: rather than being capable of climbing stairs or ramps frequently, Dr. Mohanty assessed Plaintiff to be capable of climbing stairs or ramps only occasionally.  (T. at 67.)

The ALJ considered this opinion alongside Dr. Gandhi's and found it persuasive.  (T. at 27.)  The ALJ applied the same analysis to both opinions, noting that they were "supported by a detailed narrative rationale" "cit[ing] supporting objective medical evidence and other evidence from the record."  *Id.*

### D.    Jennie Brown, M.D.

Plaintiff obtained a medical opinion from Jennie Brown, M.D., her primary care physician.  (T. at 481-83.)  Dr. Brown issued her opinion on February 4, 2022, in the form of a

three-page worksheet. (T. at 483.) She assessed Plaintiff's prognosis as "fair," but followed up by placing a check mark next to the statement that Plaintiff is "incapable of even 'low stress' jobs." (T. at 481.) Dr. Brown opined Plaintiff was capable of walking four city blocks without rest or severe pain, sitting and standing for no more than 30 minutes at one time, sitting or standing for no more than two hours in an eight-hour workday, and noted Plaintiff would need a job that permits shifting positions at will. *Id.* Dr. Brown further assessed Plaintiff could lift and carry up to 10 pounds rarely, and never more than 10 pounds; Plaintiff could rarely look down, and only occasionally look left, right, or up, as well as only occasionally lock her head in a static position. (T. at 482.) Dr. Brown opined Plaintiff could never twist, stoop, crouch, climb ladders, or climb stairs, and could only rarely grasp, turn, or twist objects. *Id.* Dr. Brown also opined Plaintiff's impairments would produce "good days" and "bad days," the impairments would likely force her to be absent from work more than four days per month, and she was likely to be in pain severe enough to interfere with attention and concentration on a constant basis. (T. at 483.) Dr. Brown also noted Plaintiff should avoid temperature extremes, wetness, and humidity. *Id.*

The ALJ found this opinion unpersuasive. (T. at 27.) The ALJ noted that, while Dr. Brown "assigns disabling functional limitations," "these disabling limitations are not supported by any substantial explanation on the assessment document itself." *Id.* The ALJ also compared Dr. Brown's opinion to Plaintiff's treatment records and found that "they do not include information that supports disabling limitations." *Id.* The ALJ determined Dr. Brown's opinion to be inconsistent with Plaintiff's medical records as a whole, as well as Plaintiff's self-reported ADLs. *Id.*

## VI.    THE COURT'S ANALYSIS

### A.    Substantial Evidence Supports the ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. §
404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained
work activities in an ordinary work setting on a regular and continuing basis.  A regular and
continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."
*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d
45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must
consider a claimant's physical abilities, mental abilities, symptomology, including pain and other
limitations which could interfere with work activities on a regular and continuing basis."  *Id*.
(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by
an individual's response to demands of work . . . must be reflected in the RFC assessment.'"
*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,
2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth
with sufficient specificity to enable [the Court] to decide whether the determination is supported
by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Plaintiff contends the ALJ erred by relying "upon the opinions of the State agency
reviewing pediatricians without applying the regulatory factors to the opinions," specifically by
"fail[ing] to provide more than a conclusory evaluation of the regulatory factors."  (Dkt. No. 10
at 8, 9.)  The Court disagrees.

An ALJ must consider each relevant medical opinion and prior administrative medical
finding and articulate how persuasive they found them.  20 C.F.R. § 404.1520c(a)-(b).  "The
factors of supportability . . . and consistency . . . are the most important," and an ALJ must

address them in crafting their decision.  20 C.F.R. § 404.1520c(b)(2).  Therefore, an ALJ must

articulate how relevant they found an opinion's objective medical evidence and supporting

explanations.  *See* 20 C.F.R. § 404.1520c(c)(1).  They must also assess how consistent a medical

opinion or prior administrative medical finding ("PAMF") is with the other medical and

nonmedical evidence in the record.  *See* 20 C.F.R. § 404.1520c(c)(2).  An ALJ must consider,

but does not necessarily need to address, the factors outlined in 20 C.F.R. § 404.1520c(c)(3)-(5).

Put simply, an ALJ's opinion can survive review by the courts if it articulates "such relevant

evidence as a reasonable mind might accept to support a conclusion."  *Biesteck v. Berryhill*, 139

S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Here, the Court finds the ALJ's analysis regarding Plaintiff's functional limitations and

restrictions affords an adequate basis for meaningful judicial review, applies the proper

standards, and is supported by substantial evidence.  The ALJ based his opinion on all of the

evidence in the record, and articulated how he considered the supportability and consistency of

that evidence as required by 20 C.F.R. § 404.1520c.  The ALJ found the opinions of Drs. Gandhi

and Mohanty persuasive, the opinion of Dr. Figueroa less persuasive, and the opinion of Dr.

Brown unpersuasive.  (T. at 27.)

Specifically, the ALJ found the opinions of Drs. Gandhi and Mohanty were "supported

by a detailed narrative rationale, and these rationales cite supporting objective medical evidence

and other evidence from the record."  (T. at 27.)  The ALJ also found the opinions of Drs.

Gandhi and Mohanty to be consistent with the record as a whole, noting that they comported

with "the physical capacity evidenced by the claimant's activities of daily living and the

claimant's strong recovery from knee replacement surgery."  *Id.*  The ALJ appropriately

"explain[ed] how [he] considered the supportability and consistency factors."  20 C.F.R. §

404.1520c(b)(2).   Bearing in mind that the applicable standard of review for decisions of the Commissioner of Social Security is "substantial evidence," and that "the threshold for such evidentiary sufficiency is not high," the ALJ here has met his burden.  *Biesteck,* 139 S. Ct. at 1154.

Drs. Gandhi and Mohanty reviewed Plaintiff's medical records, work history, and ADLs. (T. at 49, 62-63.)  Dr. Mohanty also reviewed Dr. Figueroa's examination report and medical source statement.  (T. at 61.)  Both came to the same conclusions, with the exception that Dr. Mohanty assessed Plaintiff as capable of climbing stairs or ramps occasionally rather than frequently.  (T. at 52-54, 66-68.)  Both Dr. Gandhi and Dr. Mohanty provided a detailed narrative rationale for their determinations, citing to specific evidence in Plaintiff's medical record including objective evidence and the opinions of other medical professionals.  (*See* T. at 54, 68-69.)  Drs. Gandhi and Mohanty's explanations incorporated the following objective evidence of Plaintiff's condition, from Plaintiff's February 12, 2021, examination at Syracuse Orthopedic Specialists:

> Exam: BMI 35, pulses intact, gait normal, mild quadriceps motor atrophy.  No AD used, sensation intact. L knee w/out tenderness to palpation, no crepitus.  Standing alignment is neutral.  No pain w/ROM, mild global loss. Extensor mechanism intact, stability tests negative.  XRs reviewed show satisfactory post op findings. Joint remains reduced, no evidence of implant loosening, hardware in good position.

(T. at 54, 68; *see also* T. at 316.)  Drs. Gandhi and Mohanty also relied on the opinions of Dr. Wnorowski, Plaintiff's treating physician from Syracuse Orthopedic Specialists, whose report noted that Plaintiff was "doing extremely well subjectively and objectively almost 12 months postop.  She denies pain, swelling, or fever.  No post complications and rehab is progressing normally."  (T. at 54; *see also* T. at 316-17.)

Drs. Gandhi and Mohanty did not cherry-pick from Dr. Wnorowski's assessment. Plaintiff's records from Syracuse Orthopedic Specialists generally indicate a strong recovery from the February 24, 2020, knee surgery. Specifically, Dr. Wnorowski notes that "Patient states she is doing well. No complaints." (T. at 315.) From a section of Dr. Wnorowski's report titled "History of Present Illness," he notes:

> The patient's post-surgical course has been without complication. Rehabilitation is progressing normally. The patient denies increased pain, increased swelling, fever, chills or purulent drainage. . . . Now almost 1 year postop. No significant pain, no regular pain meds, no mechanical symptoms, very satisfied, no ambulatory aids, doing well with ADLs.

*Id.* Under "Review of Symptoms," Dr. Wnorowski notes "pain and swelling, but no fracture and no stiffness." *Id.* However, in the section immediately below titled "Physical Exam," he states "There is no swelling noted . . . There is no tenderness to palpation about the knee. No crepitation about the left knee. There is knee effusion which is subtle. Standing alignment is neutral. ROM: there is no pain within range of motion." (T. at 316.) While Dr. Wnorowski's notes are somewhat unclear about Plaintiff's experience of pain and swelling, as discussed more fully below the ALJ gives credence to Plaintiff's reports of pain, disputing only "the extent of the functional limitations caused by her pain." (T. at 26.) Overall, Dr. Wnorowski's February 12, 2021, report is supportive of Drs. Gandhi and Mohanty's disability determination explanations.

The ALJ found the opinion of Dr. Figueroa "less persuasive" than the opinions of Drs. Gandhi and Mohanty because it "described the claimant's physical limitations using vague terminology," leaving the ALJ unable to assess its supportability or consistency. (T. at 27.) However, the ALJ noted that an interpretation of Dr. Figueroa's opinion which results in greater physical limitations than those reflected in the RFC "would not be well supported by Dr. Figueroa's physical examination findings." *Id.*

Dr. Figueroa's objective findings, quoted in full in Section V.B., *supra*, are indeed difficult to reconcile with her medical source statement.  (*Compare* T. at 377-78 *with* T. at 379.) Dr. Figueroa's objective findings are generally benign, noting Plaintiff's gait was normal, she "could walk on heels and toes without difficulty," she used no mobility devices and needed no assistance during the exam.  (T. at 377.)  She reports Plaintiff's squat was "50%," and her stance was abnormal noting Plaintiff's "right leg stance is straight, while the left knee is valgus."  *Id.* However, Plaintiff had generally good flexion, extension, and rotation in her spine, generally good range of motion in her shoulders, elbows, forearms, wrists, knees, and ankles, and no tenderness, redness, heat, swelling, or effusion of the joints.  *Id.*  Her ankle dorsiflexion was limited to 15 degrees and plantar flexion was limited to 30 degrees.  *Id.*  It is not clear which of Dr. Figueroa's findings would indicate "severe limitations for prolonged sitting, walking, standing, kneeling, squatting, and crawling," and she does not elaborate further.  (T. at 379.)

The ALJ found the opinion of Dr. Brown unpersuasive, and determined her opinion was not "supported by any substantial explanation on the assessment document itself."  (T. at 27.) He further found her underlying treatment records do not "include information that supports disabling limitations."  *Id.*  The ALJ correctly assessed that Plaintiff's records "do not include longitudinal physical examination findings consistent with significant functional loss."  *Id.*  The records from St. Joseph's Physicians Family Medicine are sparse on information that would support disabling pain or physical limitations.  In chronological order, the introductory section of the January 27, 2020, encounter notes states "Plaintiff elects for surgical procedure due to continued pain.  Unrelieved with Celebrex 200 mg a day. And conservative treatment."  (T. at 304.)  The "Review of Systems" indicates Plaintiff's musculoskeletal system is "Positive for

arthralgias." (T. at 305.) The Physical Exam section notes "She exhibits edema," and has "Trace bilateral pedal edema." (T. at 308.)

An informative comparison can be made between this office visit, dated approximately a month before Plaintiff's total knee replacement, and the subsequent six office visits. For example, the "Subjective" section of the May 4, 2020, notes say the following regarding Plaintiff's February 4, 2020, left total knee replacement: "Doing well. Has lost wt." (T. at 293.) The encounter notes do not mention Plaintiff's leg or knee pain, but do state "Negative for arthralgias, . . . joint swelling, . . ." and "She exhibits no edema or tenderness." (T. at 293-96.) On August 4, 2020, Dr. Brown reported Plaintiff "has done well after knee replacement has lost weight." (T. at 284.) The record does not mention Plaintiff's leg or knee pain. (*See* T. at 284-85.) Plaintiff is again noted to be "Negative for arthralgias, . . . joint swelling, . . ." and she has "Normal range of motion. She exhibits no edema or tenderness." (T. at 285.) On November 4, 2020, there was no mention of Plaintiff's leg or knee pain. (*See* T. at 275-76.) There is no reference to pain or joint swelling. *See id.* The February 4, 2021, encounter notes also do not mention Plaintiff's leg or knee pain. (*See* T. at 263-65.) Plaintiff is noted to be negative for back pain; other systems reviewed are negative; she exhibits normal range of motion, and she has no edema or tenderness. (T. at 265-66.) On August 4, 2021, Plaintiff's leg and knee pain are again not discussed, but Dr. Brown reports "Negative for arthralgias." (T. at 453-55.) Likewise, Plaintiff's leg and knee pain are not mentioned in the notes from a December 4, 2021, office visit. (*See* T. at 411-13.) To summarize, Dr. Brown's medical opinion is a substantial departure from the treatment records that she authored. The ALJ was correct to find Dr. Brown's opinion inconsistent with the record.

Taking all the relevant factors into account, the ALJ marshaled substantial evidence to find Drs. Gandhi and Mohanty's opinions persuasive.  "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Gamble v. Comm'r of Soc. Sec.*, No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016) (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), *report-recommendation adopted by* 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016).  The ALJ also correctly determined, based upon substantial evidence, that the opinion of Dr. Figueroa was less persuasive, and the opinion of Dr. Brown was unpersuasive.

**B.     The ALJ Properly Considered Plaintiff's Self-Reported Symptoms and Activities of Daily Living**

Plaintiff claims the ALJ erred when evaluating her symptomology by relying too heavily on her "limited daily activities and by failing to clearly articulat[e] how Plaintiff's allegations were inconsistent with the record."  (Dkt. No. 10 at 23.)  It is well settled "that eligibility for disability benefits is not contingent on a claimant being rendered completely incapacitated."  *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *10 (D. Vt. July 14, 2020) (citing *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)).  However, in considering a claimant's symptoms, an ALJ must "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R. § 404.1529(c)(4).

To this end, Plaintiff stated at her March 21, 2022, administrative hearing that she has "a severe pain in my right leg, that I can't sit or stand, I have to lay down and it still does not lessen the pains that I experience in my right leg."  (T. at 40.)  Plaintiff estimated that she could walk "just [a] few steps" before having to stop, depending "on the severity of the pain."  *Id.*  She does

not use a cane or any other kind of mobility device to assist with walking.  (T. at 41.)  Plaintiff

reported feeling "some pain in the left [knee] from arthritis."  *Id.*  She treats her pain "as needed

with Celebrex," which could "be three or four times a week."  (T. at 42.)  Plaintiff reiterated later

that she suffers pain both while sitting and standing, that laying down "only lessens the severity

of the pain" and "the pain just doesn't go away."  (T. at 43.)  Plaintiff also reported pain during

her initial application for SSDI.  (T. at 198.)  She noted she "can not [sic] stand or sit for long

periods of time" on her Function Report, filed February 28, 2021, as part of her application.  (T.

at 205.)  Plaintiff also reported she used to, and can no longer, play basketball.  (T. at 206.)

The Court agrees with the ALJ that Plaintiff's "record shows that she maintains a

reasonable activity level," and her self-reported ADLs "[do] not fully support [her] allegations

regarding the extent of the functional limitations caused by her symptoms."  (T. at 26.)  In her

SSDI application materials, Plaintiff notes she has pets she cares for without assistance.  (T. at

206.)  She has no problem with personal care, she cooks "complete meals with several courses"

every day, and she launders and irons her own clothes.  (T. at 206-07.)  Plaintiff also reports

mowing her own lawn and shoveling snow as needed.  (T. at 207.)  She goes outside alone every

day for walks, or to drive her car on errands, again without assistance of any kind.  (T. at 208.)

Plaintiff also reports an active social life, with in-person visits, talking on the phone, or texting

and emailing every day.  (T. at 209.)  She does not require mobility devices of any kind.  (T. at

211.)  During her administrative hearing, Plaintiff reiterated that she goes grocery shopping and

runs errands for herself, and she manages meal preparation, cleaning, and laundry work on her

own.  (T. at 42.)

The ALJ appropriately considered Plaintiff's symptomology and ADLs, and indeed was

required to consider her ADLs along with all the medical evidence in making his RFC

determination.  20 C.F.R. § 404.1545(a)(3).  Specifically, the ALJ was required to evaluate

"descriptions and observations of [Plaintiff's] limitations . . . including limitations that result

from [Plaintiff's] symptoms, such as pain, provided by [Plaintiff]."  *Id.*

Thus, the Court finds the ALJ properly considered Plaintiff's daily activities and

symptomology.  The Court further concludes that substantial evidence supports the ALJ's RFC

determination.  Plaintiff's arguments amount to a disagreement about the ALJ's resolution of

conflicting evidence.  This Court will not reweigh the evidence presented to the ALJ.  *See*

*Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9

(N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a

plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the

administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.

[Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is

substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp.

150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL

7238947 (N.D.N.Y. Dec. 13, 2016).

**VII.    CONCLUSION**

Considering the foregoing, the Court finds the ALJ's decision was based upon correct

legal standards, and substantial evidence supports his determination that Plaintiff was not under a

disability within the meaning of the SSA.  20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's

motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED** and the complaint (Dkt. No.

1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: February 5, 2024
        Syracuse, New York


Thérèse Wiley Dancks
United States Magistrate Judge